IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT L. VINE, JR.,          )
                                      )
               Plaintiff,    )
                                      )   CIVIL ACTION
v.                              )
                                      )   No. 09-2212-KHV-GBC
                                      )
MICHAEL J. ASTRUE,        )
Commissioner of Social Security,   )
                                      )
              Defendant.   )
_____ )

## REPORT AND RECOMMENDATION

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying supplemental security income (SSI) under sections 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court recommends judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.   Background

Plaintiff protectively applied for SSI on September 12, 2005 alleging disability since October 1, 2001. (R. 23). The application was denied initially and upon reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). Id. Plaintiff's request was granted, and plaintiff appeared with counsel for a hearing before ALJ Jack D. McCarthy

on October 11, 2007.  Id.  At the hearing, testimony was taken from plaintiff, from a medical expert (ME), and from a vocational expert (VE).  (R. 23, 527-28).  On June 25, 2008, the ALJ issued a decision finding that although plaintiff is unable to perform his past relevant work, there is a significant number of jobs in the national economy of which plaintiff is capable.  (R. 23-33).  He therefore concluded that plaintiff is not disabled within the meaning of the Act, and denied his application.  (R. 32-33).

Plaintiff disagreed with the decision and sought Appeals Council review.  (R. 19, 523-26).  The Council found no basis to change the ALJ's decision, and denied review.  (R. 10-13).  The decision is the final decision of the Commissioner, and plaintiff now seeks judicial review.  Id. at 10; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance,

and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 416.920

-3-

(2008); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004);
<u>Ray</u>, 865 F.2d at 224. "If a determination can be made at any of
the steps that a claimant is or is not disabled, evaluation under
a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d
748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether he has severe impairments, and
whether the severity of his impairments meets or equals the
severity of any impairment in the Listing of Impairments (20
C.F.R., Pt. 404, Subpt. P, App. 1). <u>Id.</u> at 750-51. If
plaintiff's impairments do not meet or equal the severity of a
listing, the Commissioner assesses claimant's residual functional
capacity (RFC). 20 C.F.R. § 416.920(e). This assessment is used
at both step four and step five of the sequential process. <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates
steps four and five--whether the claimant can perform his past
relevant work, and whether, when considering vocational factors
(the claimant's age, education, and past work experience), he is
able to perform other work in the economy. <u>Williams</u>, 844 F.2d at
751. In steps one through four the burden is on claimant to
prove a disability that prevents performance of past relevant
work. <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001);
<u>Williams</u>, 844 F.2d at 751 n.2. At step five, the burden shifts

-4-

to the Commissioner to show jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff asserts three errors in the decision. (1) The ALJ found an impairment in plaintiff's right hand (diminished grip strength on the right), but erred by failing to include limitations in his RFC assessment resulting from that impairment. (2) The ALJ erred in relying upon the vocational expert (VE) testimony, because the testimony conflicts with the Dictionary of Occupational Titles (DOT), and the ALJ did not resolve the conflict. And, (3) the ALJ failed to give controlling weight to the medical opinion of treating physician, Dr. Delzell, and thereby erred in weighing the medical opinions. The Commissioner responds to each of plaintiff's allegations of error, arguing that (1) the ALJ properly and sufficiently accounted for plaintiff's diminished grip strength by finding that plaintiff is able to lift and carry only twenty pounds occasionally and only ten pounds frequently; (2) the ALJ properly relied upon the VE testimony because he specified limitations in his hypothetical to the VE, he asked the VE if her responses were consistent with the DOT, and the VE testified that her responses were consistent; and (3) the ALJ properly evaluated the medical opinions.

**III. Limitations Regarding Reduced Right Hand Grip Strength**

In a single paragraph, without any citation to evidence in the record or to legal or medical authority, plaintiff argues that "the ALJ found Vine had limitations in the use of his right hand," and the RFC assessed by the ALJ does not include limitations "in the use of the right hand." (Pl. Br. 6). He concludes that in these circumstances, "the ALJ needed to include [such] limitations in [Vine's] RFC," and the failure to do so was prejudicial.

As plaintiff acknowledges, the ALJ found at step two that plaintiff has a "severe" combination of impairments including "diminished grip strength on the right." (Pl. Br. 1, ¶ 5)(citing (R. 26)). He also acknowledges that the RFC assessed by the ALJ limits plaintiff to lifting and/or carrying twenty pounds occasionally and ten pounds frequently, and provides that plaintiff must avoid climbing ladders, ropes, and scaffolds, unprotected heights, dangerous machinery, vibration, and working overhead. Id., 2-3, ¶ 8(quoting (R. 26-27))(ALJ's RFC assessment). However, plaintiff asserts that the RFC assessed by the ALJ does not properly account for, or include limitations attributable to, plaintiff's impairment of his right hand. Finally, in his reply brief, plaintiff cites Johnson v. Astrue, No. 07-1310-MLB, 2009 WL 102681 at *4 (D. Kan. Jan. 7, 2009), for the proposition that a severe impairment must be reflected in the RFC assessed. (Reply, 2).

As the Commissioner pointed out, Dr. Pickett found plaintiff has twenty pounds grip strength on the right and eighty pounds grip strength on the left. (Comm'r Br. 17)(citing (R. 447)). The ALJ's RFC finding limiting plaintiff to lift and carry twenty pounds occasionally and ten pounds frequently reflects, at least in part, plaintiff's reduced grip strength on the right. Reduced grip strength makes an individual less able to support his own weight, and at least in part, justifies the limitations against climbing ladders, ropes, and scaffolds, working around dangerous machinery, and working at unprotected heights. Similarly, working overhead and working around vibration will be affected by reduced grip strength, and reduced grip strength accounts in part for the ALJ's limitations in those areas. The court finds that each of the limitations listed above and included in the RFC assessed in this case can be attributed, at least in part, to the ALJ's finding that plaintiff has diminished grip strength on the right. Therefore, in accordance with the <u>Johnson</u> decision, the RFC assessed here reflects the severe impairment of diminished grip strength on the right. Therefore, plaintiff's argument that the ALJ did not include limitations in RFC attributable to reduced grip strength on the right is clearly unsupportable on its face.

Moreover, although plaintiff apparently believes additional limitations due to reduced grip strength are necessary in the

circumstances, and plaintiff argues the failure to include additional limitations is prejudicial, plaintiff does not state what additional limitations are necessary, does not cite to record evidence establishing the additional limitations, and does not show how he is prejudiced by the failure to include particular limitations. The court finds no error.

## IV. VE Testimony and Conflict with the DOT

Plaintiff acknowledges that the ALJ asked the VE if there was a conflict between her testimony and the DOT, and the VE testified there was no conflict. (Pl. Br. 3 ¶ 9, 6)(citing (R. 551)). Plaintiff asserts that the VE's testimony "was wrong;" that in accordance with the DOT, the representative jobs identified by the VE require substantial reaching and handling, and the VE did not explain this conflict. (Pl. Br. 6). The only authority cited in support of plaintiff's argument is <u>Social Security Ruling</u> (SSR) 00-4p. (Pl. Br. 7).

### A. Standard for Evaluating Conflicts Between VE Testimony and the DOT

In November, 1999, the Tenth Circuit decided that before an ALJ may rely on VE testimony, the ALJ has a duty to ask the VE how the testimony corresponds with the DOT and to elicit a reasonable explanation for any conflict. <u>Haddock</u>, 196 F.3d at 1089. The court made clear that the DOT does not "trump" VE testimony, but rather that the ALJ has a duty to investigate and get a reasonable explanation before he may rely on VE testimony.

-8-

Id. at 1091.  Thereafter, the Commissioner published SSR 00-4p,
effective December 4, 2000.  West's Soc. Sec. Rep. Serv.,
Rulings, 242-47 (Supp. 2009).  In SSR 00-4p, the Commissioner
established a policy interpretation for the use of VE testimony
and "Other Reliable Occupational Information in Disability
Decisions."  Id. at 243.

In the ruling, the Commissioner placed two duties on an ALJ.
First, the ALJ must "identify and obtain a reasonable explanation
for any conflicts between occupational evidence provided by VEs
. . . and information in the Dictionary of Occupational Titles
(DOT), including its companion publication, the Selected
Characteristics of Occupations Defined in the Revised Dictionary
of Occupational Titles (SCO)."  Id. (emphasis added).  Second,
the ALJ must "[e]xplain in the determination or decision how any
conflict that has been identified was resolved."  Id.  Thus, SSR
00-4p places the affirmative responsibility on the ALJ to "[a]sk
the VE . . . if the evidence he or she has provided conflicts
with information provided in the DOT," and where VE "evidence
appears to conflict with the DOT, . . . [to] obtain a reasonable
explanation for the apparent conflict."  Id. at 246.

### B.   The ALJ's Inquiry and the Decision at Issue

At the hearing, the ALJ questioned the VE.  (R. 548-51).  He
elicited testimony that a person of the age, work experience, and
education of plaintiff, with the RFC assessed for plaintiff and

with the additional restriction to "avoid constant or repetitive handle and finger," would be unable to do plaintiff's past work, but could perform work such as the representative jobs discussed in plaintiff's brief.  <u>Id.</u>  At the end of his examination, the ALJ asked, "Is there any conflict between your testimony about these jobs and the information about them in the DOT or the selected characteristics of occupations?"  (R. 551).  The VE responded, "I'm checking.  No."  <u>Id.</u>  At that point, the ALJ turned the examination over to plaintiff's attorney, who questioned the VE regarding the ability of a hypothetical individual to do the jobs identified by the VE if the individual had different or additional limitations than assessed by the ALJ. (R. 552-54).  Counsel also asked if the hypothetical person could do any of the sedentary jobs or the small parts assembler job identified by the VE "if they could not have repetitive fingering?"  (R. 554).  The VE responded that the jobs identified require frequent fingering but not repetitive or constant fingering.  <u>Id.</u>  She explained that frequent is different that repetitive.  <u>Id.</u>  In his decision, the ALJ found, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the <u>Dictionary of Occupational Titles</u> and its companion publication, the <u>Selected Characteristics of Occupations</u>."  (R. 32).

### **C.   Analysis**

Plaintiff's claims fail. First, as required by law and the rulings, the ALJ asked if there were inconsistencies between the VE testimony and the DOT or the SCO. (R. 551). The VE replied that there were none. Id. The ALJ fulfilled his first duty pursuant to SSR 00-4p. Plaintiff cross-examined the expert, and although his questioning suggested that there are conflicts between the VE testimony regarding fingering requirements and the DOT or the SCO, the VE explained that there is no conflict, the jobs require frequent fingering but they do not require repetitive fingering, and that repetitive is not the same as frequent. (R. 554). Plaintiff made no inquiry regarding handling. Plaintiff did not point to record evidence or admissible authority that despite the VE testimony there is a conflict, and did not argue to the ALJ that the VE testimony was erroneous. Thus, the administrative record contains no evidence that the VE testimony and the DOT or SCO are inconsistent as alleged by plaintiff before this court, and no hint that the ALJ's second duty pursuant to SSR 00-4p (to explain any apparent conflict) was triggered.

Before this court, plaintiff argues directly from the listings in the DOT that there are, in fact, conflicts between the VE testimony and the DOT. (Pl. Br. 3, 6)(appealing to ¶ 12, which suggests that the reaching requirement conflicts with the RFC limitation to "avoid working overhead"). An ALJ must take

administrative notice of the DOT listings as authoritative
information regarding jobs in the economy, and where the ALJ has
not done so the court in appropriate circumstances will do so.

Neither the ALJ, this court, plaintiff, nor plaintiff's
counsel are experts in vocational matters with the expertise to
interpret the DOT contrary to the interpretation given by the VE.
Plaintiff simply presents no basis in the record evidence, or
legal or vocational authority to find otherwise than as testified
by the VE.  Plaintiff presents no authority whatsoever that any
DOT requirement for reaching or handling necessarily violates a
restriction from working overhead.  He presents no authority
whatsoever for the proposition that the DOT criteria for frequent
handling or frequent fingering is in conflict with the ALJ's
hypothetical question which included the necessity to avoid
<u>repetitive</u> handling and fingering.  The court sees no apparent
conflict between the information presented in paragraph 12 of
plaintiff's brief and the VE's testimony.  However, were the
court to find an apparent conflict, lacking vocational expertise,
record evidence, or other admissible authority to establish that
a conflict actually exists, the court would be compelled to
accept the vocational expert's undisputed testimony that there is
no conflict.  Plaintiff's or his counsel's mere assertion as a
lay observer that the DOT or SCO listings require a different
finding than as testified by the expert are insufficient to

contravene the direct testimony of the vocational expert. The court may not reweigh the evidence or make its decision based upon evidence outside the record. The only record evidence is the VE testimony that the DOT and SCO are consistent with the VE testimony. The ALJ followed the dictates of SSR 00-4p, and the record evidence reveals no apparent conflict between the VE testimony and the DOT or SCO. The court finds no error in the ALJ's consequent decision to rely upon the VE testimony.

**V.   Evaluation of the Medical Opinions**

Plaintiff claims the ALJ gave inadequate weight to the treating source opinion of Dr. Delzell, and "should have adopted the opinion." (Pl. Br. 8). He specifically attacks three of the reasons given by the ALJ for discounting Dr. Delzell's opinion, id. at 9-12, and concludes that the "ALJ has not met his burden in bringing forth legitimate reasons for giving little weight to Dr. Delzell's opinion." Id. at 12. The Commissioner argues that the ALJ gave specific, legitimate reasons for discounting Dr. Delzell's opinion, those reasons are supported by substantial evidence in the record, and the court should affirm the ALJ. (Comm'r Br. 14-16). The court finds substantial evidence in the record as a whole supports the ALJ's determination.

**A.   Standard for Evaluating Medical Opinions**

A treating physician's opinion about the nature and severity of plaintiff's impairments should be given controlling weight by

the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the opinion. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Watkins</u>, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. <u>Id.</u> at 1301; 20 C.F.R. § 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288,

290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007)(quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

**B.    The ALJ's Evaluation of Dr. Delzell's Medical Opinion**

For reasons that will become apparent later, the court finds it necessary to include an allusion to one factor in the ALJ's determination that plaintiff's allegations of symptoms are not credible.  In his credibility analysis, the ALJ gave as one reason for finding plaintiff's allegations not credible, the fact that plaintiff presented at a consultative psychological examination wearing an arm brace and walking with the assistance of an umbrella.  (R. 29).  In response to this behavior, the ALJ stated, "Examinations performed by John E. Delzell, Jr., M.D., both before and after that psychological evaluation never reflected the fact the claimant required an assistive device

despite the notation of a right leg limp.  There is nothing in the medical evidence that indicated the use of an assistive device was medically necessary."  (R. 29).

The ALJ summarized Dr. Delzell's opinion.  He noted that Dr. Delzell had completed a <u>Physician's Residual Functional Capacity</u> form in November 2007.  <u>Id.</u>  He summarized Dr. Delzell's statements:

> In that form, Dr. Delzell was unable to estimate the amount of weight the claimant was able to lift or how long he was able to sit, stand or walk.  However, he opined the claimant could not use leg and foot controls to push and/or pull and had "mild" limitations against being around moving machinery and driving automotive equipment.  Dr. Delzell believed the claimant's complaints of pain and indicated that objective evidence and a March 2006 MRI demonstrated a condition which could reasonably be expected to give rise to this degree of pain.  Furthermore, he opined the claimant's ability to perform the activities noted above would be further reduced by his/her pain and that there was objective evidence of pain.  Finally, Dr. Delzell indicated the claimant had "fair" ability to deal with the stress of typically "low stress" jobs.

<u>Id.</u>(citing Ex. C11F(R. 515-18)).

The ALJ analyzed Dr. Delzell's opinion and stated six reasons in support of his determination to accord the opinion "little weight."  (R. 30).  (1) Whether a claimant is "disabled" within the meaning of the Act, and the assessment of a claimant's RFC are issues reserved to the Commissioner and are not entitled to controlling weight or any special significance.  (2) The opinion is "not fully supported by medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u>  The opinion is

inconsistent with other substantial evidence in the record including (3) the consultative examination of Dr. Pickett, and (4) the medical expert testimony of Dr. Brahms. (R. 30-31). (5) Dr. Delzell declined to provide an estimate of plaintiff's walking or standing ability. (R. 30). And, (6) Dr. Delzell's statement regarding plaintiff's ability to tolerate stress is a psychological opinion which is outside his area of expertise. Id. The ALJ also discussed and summarized the opinions of Dr. Pickett, and Dr. Brahms. (R. 30-31).

### C.   Analysis

Plaintiff argues that the ALJ should have adopted Dr. Delzell's opinion, thereby implying that the opinion should have been given controlling weight. However, plaintiff makes no specific argument that the opinion is (1) well supported by clinical and laboratory diagnostic techniques and that it is (2) not inconsistent with other substantial evidence in the record. Nonetheless, the court need not pause long in this consideration. If the opinion is deficient in either of the criteria, then it is not entitled to controlling weight. Watkins, 350 F.3d at 1300.

SSR 96-2p, cited by the court in Watkins, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in Richardson

-17-

v. Perales, 402 U.S. 389 (1971). SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2009). As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." Id.

The threshold for denying controlling weight is low. The ALJ need only point to evidence which is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion." SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2009). Although plaintiff disagrees with Dr. Brahms's opinion and believes it is inadequate in the circumstances to support a decision to discount Dr. Delzell's opinion, it is clear that Dr. Brahms's opinion is inconsistent with Dr. Delzell's. Dr. Brahms found plaintiff could perform work at the medium exertion level. Dr. Delzell found that plaintiff suffered from debilitating pain and would need to miss work three or more times a month due to his impairments. Although it is not clear at this stage of the analysis that Dr. Brahms's opinion should outweigh Dr. Delzell's opinion, it is clear that the opinions are inconsistent. Because Dr. Brahms's opinion is "such relevant evidence as a reasonable

mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed" by Dr. Delzell, the physicians' opinions are inconsistent, Dr. Delzell's opinion does not meet the test for controlling weight, and it was appropriate for the ALJ to determine not to give controlling weight to Dr. Delzell's opinion.

The inquiry should not end at this point, and the ALJ properly went on to consider all of the medical opinions in light of the regulatory factors, and stated six reasons for according little weight to Dr. Delzell's opinion. Plaintiff contests reasons 2, 3, and 4, the findings that Dr. Delzell's opinion is not fully supported by medically acceptable clinical and laboratory diagnostic techniques, and that it is inconsistent with the opinions of Drs. Pickett and Brahms.

In his opinion, Dr. Delzell stated that he believed plaintiff's complaints of pain, that there is objective evidence of a condition which could reasonably be expected to produce the degree of pain alleged by plaintiff, and that an MRI done on March 30, 2006 provides objective findings of such pain. (R. 516). Plaintiff points to this objective evidence, and argues that the ALJ erred in finding that Dr. Delzell's opinion is not fully supported by medically acceptable clinical and laboratory diagnostic techniques. (Pl. Br. 9). He implies that by stating this reason to discount Dr. Delzell's opinion, the ALJ was

substituting his own judgment for that of Dr. Delzell. Id.(citing Kerwin v. Astrue, 244 F. App'x 880, 884 (10th Cir. 2007); and Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996)). Plaintiff's argument misses the point of the ALJ's reasoning, and misunderstands the duty of the ALJ.

The ALJ did not say that Dr. Delzell's opinion is in no respect supported by medically acceptable clinical and laboratory diagnostic techniques. Rather, he found that the opinion is "not fully supported by medically acceptable clinical and laboratory diagnostic techniques." (R. 30)(emphasis added). In his credibility determination, the ALJ reached much the same determination as did Dr. Delzell regarding plaintiff's pain. He found that plaintiff has degenerative disc disease, and that degenerative disc disease is an impairment which could reasonably be expected to produce the pain alleged by plaintiff. (R. 27-29). As to this point, the ALJ accepted Dr. Delzell's opinion. Therefore, it is of no consequence that Dr. Delzell cited to an MRI showing the results of degenerative disc disease as objective evidence that plaintiff's impairment could reasonably produce the pain alleged. To this extent the ALJ accepted the opinion as supported by medically acceptable clinical and laboratory diagnostic techniques. However, Dr. Delzell also stated in his opinion form that plaintiff needs to use a cane to ambulate. (R. 518). As the ALJ specifically noted when evaluating plaintiff's

credibility, Dr. Delzell's treatment records provide evidence that plaintiff limped, but contain no indication that plaintiff required the use of an assistive device. (R. 29). To this extent at least, Dr. Delzell's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques.

The court does not find that the ALJ substituted his own judgment for that of Dr. Delzell. The ALJ's duty is to evaluate all of the evidence, including the medical opinions. Where, as here, the medical opinions conflict, it is the ALJ's duty to weigh the medical opinions and resolve the conflicts. The record does not reveal that the ALJ substituted his own judgment for that of Dr. Delzell, rather, it reveals that he weighed the evidence and the medical opinions, and explained his rationale for according "little weight" to Dr. Delzell's opinion. Therefore, the ALJ was correct in finding that "Dr. Delzell's opinion is not fully supported by medically acceptable clinical and laboratory diagnostic techniques" as one of six reasons for discounting Dr. Delzell's opinion. (R. 30).

Next, plaintiff argues that contrary to the ALJ's finding, Dr. Pickett's report is consistent with Dr. Delzell's opinion and is supportive of a finding of disability. In support of his argument, plaintiff points to many of Dr. Pickett's range of motion measurements which were less than 100% of "normal" range

of motion, to findings of paraspinous muscle spasm in the
cervical spine and to findings of diminished motor function and
weakness on the right side. (Pl. Br. 10). As plaintiff
demonstrates, there is evidence in Dr. Pickett's report which
tends to support plaintiff's argument. There is also evidence
tending to support the ALJ's findings. The ALJ summarized Dr.
Pickett's report, and his summary includes both findings
supporting disability and findings tending to negative
disability. (R. 30)(i.e., paraspinous muscle spasm in the
cervical spine, no paraspinous muscle spasm in the lumbar spine,
decreased grip strength in right hand but dexterity preserved,
etc.). The court may not reweigh the evidence or substitute its
judgment for that of the ALJ. <u>Hackett</u>, 395 F.3d at 1172; <u>White</u>,
287 F.3d at 905. Moreover, immediately after the report of Dr.
Pickett's examination, Dr. Timmerman reviewed the evidence
including Dr. Pickett's report, and affirmed an RFC assessment
with substantially lesser restrictions than found by the ALJ, and
found plaintiff capable of medium level work. (R. 451)(affirming
assessment dated 11/22/05 (R. 431-40)). On this state of the
record, the court cannot find error in the ALJ's finding that Dr.
Pickett's report is inconsistent with Dr. Delzell's opinion, or
in his use of that inconsistency as one of six reasons for
discounting Dr. Delzell's opinion. (R. 30).

Finally, plaintiff claims the ALJ erred in discounting Dr. Delzell's opinion because it was inconsistent with Dr. Brahms's opinion. He argues this is so because Dr. Brahms did not review the MRI upon which Dr. Delzell relied as objective medical evidence supporting plaintiff's allegations of debilitating pain, therefore Dr. Brahms did not review claimant's complete medical file, and in such circumstances it cannot be shown that Dr. Brahms's opinion is inconsistent with Dr. Delzell's opinion. The Commissioner argues that the regulations permit an ALJ to rely upon the opinion of a medical adviser, the ALJ properly did so in accordance with SSR 96-2p, and his findings are supported by substantial evidence in the record.

As previously discussed, Dr. Delzell stated that he relied upon the MRI in finding that plaintiff had an impairment which could reasonably result in the debilitating pain alleged by plaintiff. Dr. Brahms did not have access to the MRI at issue, and he specifically commented that MRI results would be of great interest. (R. 536). Nonetheless, Dr. Brahms did not say that the lack of MRI results prevented him from forming an opinion after reviewing the medical records, and, in fact, he did provide an opinion. As the ALJ noted, Dr. Brahms cited normal physical examinations and the absence of neurological deficits, and opined that plaintiff would be able to perform a range of medium work with no repetitive overhead work, no repetitive lifting below the

waist, occasional bending up to forty-five degrees, and no
kneeling, stooping, and crawling.  (R. 30-31); see also, (R. 535-
36).  On its face, Dr. Brahm's opinion is inconsistent with Dr.
Delzell's opinion.  Thus, it is proper for the ALJ to rely upon
that inconsistency as one reason to discount the treating
physician's opinion.

In every case, a treating physician will have greater access
to the medical records, and more familiarity with the patient and
his condition than will an examining physician or a physician who
merely reviewed the record evidence.  This is the reason for the
treating physician rule whereby greater deference is usually
accorded to the opinion of a treating physician than the opinion
of a physician who has only examined the patient one time or the
opinion of a physician who has merely reviewed the medical
records.  E.g., Robinson, 366 F.3d at 1084; Watkins, 350 F.3d at
1300-01; Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).
This is the reason the courts require an ALJ to provide specific,
legitimate reasons for discounting a treating physician's
opinion.  Id.; see also, Miller v. Chater, 99 F.3d 972, 976 (10th
Cir. 1996); Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987).
That Dr. Brahms's opinion is inconsistent with Dr. Delzell's
opinion is supported by substantial evidence in the record, and
is but one of six reasons given by the ALJ for discounting Dr.
Delzell's treating source opinion.  That Dr. Brahms, a medical

expert, had less information upon which to base his opinion than did Dr. Delzell, a treating source, is true in the majority of Social Security cases, and is contemplated in application of the treating physician rule. This fact will not preclude the ALJ from relying upon the inconsistencies between the opinions as one factor in discounting the treating physician's opinion.

Plaintiff disputed three of the six reasons given by the ALJ in discounting Dr. Delzell's opinion. Although there is a basis in the evidence for each dispute, the court has found substantial evidence in the record supporting each reason and finds no error in the ALJ relying upon each of the three disputed reasons. Moreover, the ALJ stated three additional reasons for discounting Dr. Delzell's opinion which plaintiff does not dispute. The ALJ provided specific, legitimate reasons for according "little weight" to Dr. Delzell's opinion, and the court finds no error in doing so. The court has considered each of plaintiff's arguments and finds no error in the decision at issue here.

**IT IS THEREFORE RECOMMENDED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this

recommendation within fourteen days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>11th</u> day of May 2010, at Wichita, Kansas.


<u>s:/   Gerald B. Cohn   </u>
**GERALD B. COHN**
**United States Magistrate Judge**